UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Do Hyung Kim | L. Geoffrey Lee |

**Proceedings:**      PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO HER FOURTH AND FIFTH CLAIMS
(Dkt. 31, filed June 10, 2016)

DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO PLAINTIFF'S SECOND, SIXTH, TENTH,
AND ELEVENTH CLAIMS
(Dkt. 34, filed June 17, 2016)

## I.    INTRODUCTION

On December 3, 2012, plaintiff Sheryl Horn ("plaintiff") filed the instant action in the Los Angeles Superior Court against defendants Coldwater Creek U.S. Inc. ("Coldwater Creek" or "defendant"); Debra Sexton-Johnson; and Does 1 through 50, inclusive.[1]  Dkt. 1, Ex. A (Complaint).  On January 18, 2016, Coldwater Creek removed this action to federal court, asserting federal question jurisdiction.  Dkt. 1 (Notice of Removal).  The operative complaint asserts the following ten claims: (1) Wrongful termination in violation of public policy, pursuant to Cal. Gov. Code § 12940, et seq.; (2) harassment based upon disability, pursuant to Cal. Gov. Code § 12940, et seq.; (3) discrimination based upon disability, pursuant to Cal. Gov. Code § 12940, et seq.; (4) failure to accommodate, pursuant to Cal. Gov. Code § 12940(k) and (m); (5) failure to engage in the interactive process, pursuant to Cal. Gov. Code § 12940(n) and 12926.1(e); (6) retaliation, pursuant to Cal. Gov. Code § 12940, et seq.; (7) failure to take all

---

[1]  On October 4, 2013, defendant Debra Sexton-Johnson, also referred to *infra* as "Debra Johnson," was dismissed from this action, pursuant to a joint stipulation filed by the parties.  See Dkts. 14-15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL    'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
| --- | --- | --- | --- |
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

reasonable steps to prevent harassment, discrimination, and retaliation, pursuant to Cal. Gov. Code § 12940, et seq.; (8) violation of the Family Medical Leave Act; (9) violation of the California Family Rights Acts; (10) intentional infliction of emotional distress; and (11) negligent hiring, retention, supervision, and training.

On June 10, 2016, plaintiff filed a motion for partial summary judgment as to her fourth and fifth claims, under California's Fair Employment and Housing Act ("FEHA"), for failure to accommodate and failure to failure to engage in the interactive process. Dkt. 31 ("P's Motion"). On June 17, 2016, defendant filed an opposition to plaintiff's motion for partial summary judgment. Dkt. 37 ("D's Opp'n"). On July 1, 2016, plaintiff filed a reply. Dkt. 41 ("P's Reply").

On June 17, 2016, defendant filed a motion for partial summary judgment as to plaintiff's second claim (harassment based upon disability), sixth claim (retaliation), tenth claim (intentional infliction of emotional distress), and eleventh claim (negligent hiring, retention, supervision, and training). Dkt. 34 ("D's Motion"). On June 27, 2016, plaintiff filed an opposition to defendant's motion for partial summary judgment. Dkt. 38 ("P's Opp'n"). On July 1, 2016, defendant filed a reply. Dkt. 39 ("D's Reply").

On July 18, 2016, the Court provided the parties with a tentative order and held oral argument on the instant motion. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

"conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## III.  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.  Background

The following facts are undisputed unless otherwise noted:

From approximately March 2009 through February 22, 2012, plaintiff Sheryl Horn was employed as a "sales lead" in the Simi Valley, California store location of clothing retailer Coldwater Creek. See Plaintiff's Separate Statement of Undisputed Facts ISO P's Motion ("PS"), at Nos. 1-3. In June 2010, plaintiff requested leave under the Family Medical Leave Act of 1993 ("FMLA") from her work at Coldwater Creek in order to undergo bunion surgery on her left foot. Id. at No. 7. Coldwater Creek approved the FMLA leave request, and on or about June 18, 2010, plaintiff underwent the surgery and later returned to her work position following her recuperation. Id. at Nos. 8-10.

In November 2011, plaintiff requested a second FMLA leave from Coldwater Creek to have the same bunion surgery, this time on her right foot. Id. at No. 11. Coldwater Creek's Leave Coordinator, Grace Polan, approved the request, and on or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

about November 28, 2011, plaintiff had the bunion surgery on her right foot. Id. at No. 13. Thereafter, plaintiff remained on FMLA leave for several months. Id. at No. 14. Coldwater Creek anticipated that plaintiff's return-to-work date was February 21, 2012, based upon Coldwater's expectation that plaintiff would take twelve weeks of FMLA leave. Id. at No. 15.

On Feb 20, 2012, the day before plaintiff was expected to return to work, Ms. Polan and plaintiff spoke on the phone about plaintiff's return-to-work date. Id. at No. 16. Ms. Polan informed plaintiff that she "only ha[d] a doctor's note for March 26, 2012." Id. at No. 17. Plaintiff informed Ms. Polan that she actually had a doctor's note that had her returning to work on March 5, 2012 *without any work restrictions*. Id. at No. 18. Ms. Polan informed plaintiff that she had exhausted her twelve weeks of FMLA leave, but that Polan would request a 48-hour extension of her FMLA leave while plaintiff again consulted with her doctor. Id. at Nos. 21-22. Thereafter, Coldwater Creek approved a 48-hour extension of the FMLA leave, thereby extending the leave from February 21, 2012, to February 23, 2012. Id. at No. 22.

On February 21, 2012—the day on which plaintiff had previously been scheduled to return—plaintiff and Ms. Polan had another phone conversation, during which plaintiff informed Ms. Polan that she could return on March 1, 2012. Id. at No. 24. On this same date, Ms. Polan received via fax a doctor's note releasing plaintiff to return to work on March 1, 2012 ("the March 1, 2016 Note"), albeit with certain restrictions. Id. at No. 25. Specifically, the doctor's note stated:

> Sheryl Horn is able to return to work on 3/1/2012. Restrictions: No pushing, pulling, climbing, stooping, kneeling, squatting, no lifting over 5 pounds. Must take a break every two hours for 15 minutes.

Id. at No. 26.

It is undisputed that Coldwater Creek "did not have a problem with the March 1st return to work date," but instead was concerned with the various restrictions cited in the March 1, 2016 Note. Id. at Nos. 33-34. Coldwater Creek's  District Manager, Keisha Piazza, discussed plaintiff's restrictions with other members of the Coldwater Creek "Leadership Team" and decided that Coldwater Creek could not accommodate plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

restrictions.  Id. at Nos. 4, 35, 41.  Although this is disputed, Coldwater Creek avers that it "understood" the various restrictions outlined in the March 1, 2016 Note to be "indefinite" in duration.  See Defendant's Separate Statement of Undisputed Facts ISO D's Opp'n ("DS"), at No. 47.

During the afternoon of February 22, 2012, at approximately 2:00 p.m., Ms. Piazza called plaintiff on the phone to terminate her employment.  PS at No. 48.  Ms. Piazza told plaintiff that Coldwater Creek was unable to accommodate her restrictions and therefore would be terminating her employment, but that "when she was feeling better, she could reapply."  Id. at No. 49.  Plaintiff avers that she informed Ms. Piazza that she had another doctor's note that had her returning her to work on March 5, 2012 with no restrictions; however, Coldwater Creek disputes this point, as Ms. Piazza avers that she does not think plaintiff provided a date.  See PS at No. 50; DS at No. 50.  However, it is undisputed that Ms. Piazza then told plaintiff that she had "terminated herself" because she had "exhausted her leave, we'd given her the additional 48 hours, [and] because she couldn't comply with that, it was just [that] she was terminated herself."  PS at No. 52.

After she was terminated on February 22, 2012, plaintiff  contacted Ms. Polan that same day to tell her again that she had a doctor's note releasing her to work on March 5, 2012 without any restrictions.  PS at No. 54.  Later in the day, plaintiff also faxed the March 5, 2012 doctor's note to Ms. Polan, PS at No. 55; according to defendant, plaintiff faxed the note at 5:03 p.m., after she had already been terminated, DS at No. 55.  Ms. Polan then emailed the March 5, 2012 doctor's note to Ms. Piazza and other members of the Leadership Team.  PS at No. 55.

The following day, on February 23, 2012, Ms. Polan sent a termination letter to plaintiff, stating,

> Regrettably, I must inform you that as of February 23, 2012 your Family Medical Leave has ended.  You have exhausted all available leave and due to business needs, we are unable to hold your position for you.  Therefore, your last day of employment with Coldwater Creek is February 22, 2012.

Id. at No. 59.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|----------|------------------------|------|---------------|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

B.     Discussion

Through the instant motion, plaintiff moves for summary judgment as to her fourth and fifth claims under FEHA for failure to accommodate and failure to failure to engage in the interactive process.  For reasons articulated in the discussion that follows, the Court denies plaintiff's motion.

1.     Plaintiff's Fifth Claim for Failure to Engage in the Interactive Process, pursuant to Cal. Gov. Code § 12940(n) and 12926.1(e)

Plaintiff's fifth claim, asserted under FEHA, is for failure to engage in the interactive process.  Under California Government Code section 12940(n), defendant Coldwater Creek is required to "engage in a timely, good faith, interactive process with an employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition."  Cal. Gov. Code § 12940(n); Wysinger v. Automobile Club of Southern California, 157 Cal.App. 4th 413, 424 (2007) ("Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability.").

Here, plaintiff contends that she is entitled to summary judgment on her claim for failure to engage in the interactive process because "Coldwater Creek *completely failed* in its affirmative duty to engage in the interactive process and failed to accommodate [plaintiff]."  P's Motion at 1 (emphasis added).  Specifically, plaintiff contends that after Coldwater Creek received a doctor's note indicating that plaintiff could return to work on March 1, 2016, albeit with certain restrictions, defendant "did nothing to determine whether [plaintiff's] restrictions should or should not be accommodated," (2) "did not review the Sales Lead job description to see what the essential job functions were," (3) "did not call [plaintiff] to discuss the restrictions on the doctor's note," (4) "did not ask someone . . . from Coldwater Creek to meet with [plaintiff] to discuss the restrictions on the doctor's note," (5) "did not discuss alternative jobs for [plaintiff]," (6) did not request to meet with plaintiff to discuss her restrictions, and (7) did not tell plaintiff that "accommodating her restrictions would pose an undue hardship on Coldwater Creek, or [inform plaintiff] what a 'reasonable accommodation' would have been."  Id. at 15-16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
| --- | --- | --- | --- |
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

Ultimately, however, even based upon such undisputed facts, the Court cannot conclude that plaintiff is entitled to summary judgment on her interactive process claim. Section 12940(n) does not require "ritualized discussions," but rather "an informal process with the employee to attempt to identify reasonable accommodations." Nealy v. City of Santa Monica, 234 Cal. App. 4th 359, 379 (2015). The "interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identify[ing] an accommodation that allows the employee to perform the job effectively." Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App. 4th 952, 984 (2008)) (internal quotation marks omitted).

Here, at minimum, Coldwater Creek's Leave Coordinator, Ms. Polan, spoke on the phone with plaintiff on numerous occasions before the expiration of her twelve-week FMLA leave. In response to plaintiff's assertion that she could not immediately return following the expiration of her FMLA leave and would therefore need additional time to recuperate, defendant provided plaintiff with a brief period—two days—to consult with her doctor and obtain an additional doctor's note. See PS at Nos. 21-22. Although this 48-hour reprieve preceded plaintiff's sharing of the doctor's note regarding restrictions, even "[h]olding a job open for a disabled employee who needs time to recuperate or heal *is in itself a form of reasonable accommodation* and *may be all that is required* where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future." Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 263 (2000) (emphasis added); see also Cal. Code Regs. tit. 2, § 11068 ) ("When the employee . . . needs time away from the job for treatment and recovery, . . . *extending a leave provided by . . . the FMLA . . . may be a reasonable accommodation* . . . .") (emphasis added).

Accordingly, the Court cannot conclude that no reasonable juror could find such an accommodation (following plaintiff's three-month FMLA leave) to constitute "engag[ing] in a timely, good faith, interactive process." Of course, as defendant readily concedes, "plaintiff is entitled to argue that [such an] interaction[] [was] not sufficient," D's Opp'n at 1; but the Court here simply cannot find, as plaintiff contends, that Coldwater Creek "*completely* failed in its affirmative duty to engage in the interactive process," P's Motion at 1 (emphasis added). Cf. Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 226 (1999) (noting that "in appropriate circumstances, reasonable accommodation can include providing the employee accrued paid leave or additional unpaid leave for treatment"); Fliss v. Movado Grp., Inc., 2000 WL 1154633, at *11 (N.D. Ill. Aug. 14, 2000) ("Drawing all reasonable inferences in favor of Plaintiff, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

non-movant here, it is too premature to assign blame on either party for not cooperating with the interactive process because issues of fact remain as to the reasonableness of the efforts expended by both parties after Defendant became aware of Plaintiff's physical limitations and medical impairments. Perhaps Plaintiff was being unreasonably difficult by not volunteering to provide additional medical information or to see another physician, or perhaps Defendant reasonably could have done more to encourage cooperation by Plaintiff. Those are factual issues for a jury to resolve.").

Therefore, plaintiff's motion for summary judgment as to her claim for failure to engage in the interactive process is hereby **DENIED**.

### 2.     Plaintiff's Fourth Claim for Failure to Accommodate, pursuant to Cal. Gov. Code § 12940(k) and (m)

Plaintiff's fourth claim, also asserted under FEHA, is for failure to accommodate her disability. "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." Scotch v. Art Inst. of Cal. Orange Cnty., Inc., 173 Cal. App. 4th 986, 1009 (2009).

As to the third of these elements—whether Coldwater Creek failed to reasonably accommodate plaintiff's disability—plaintiff argues that Coldwater Creek could have accommodated her by (1) providing a finite leave of absence by extending plaintiff's leave from March 1, 2012 (as provided by the doctor's note *requiring* restrictions) to March 5, 2012 (as required by the doctor's note *not* requiring restrictions); (2) by hiring an assistant to help plaintiff from March 1, 2012 to March 4, 2012, or (3) by "accommodating [plaintiff's] restrictions on the March 1st Doctor's Note by having her start work on March 1, 2012 and request other employees at the Simi Valley store to assist [plaintiff] with her restrictions until March 5, 2012." P's Motion at 24-25.

However, FEHA "does not obligate an employer to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks. [Citation.] It requires only that the accommodation chosen be 'reasonable.' " Raine v. City of Burbank, 135 Cal. App. 4th 1215, 1222 (2006). "Ordinarily, the reasonableness of an accommodation *is an issue for the jury*." Prilliman v. United Air Lines, Inc., 53

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL            'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

Cal. App. 4th 935, 953-54 (1997) (emphasis added) (quoting Schmidt v. Safeway Inc., 864 F. Supp. 991, 997 (D. Or. 1994)); see also West v. State Farm Fire & Cas. Co., 868 F.2d 348, 350 (9th Cir. 1989) ("[R]easonableness is generally a question of fact for the jury.").

Here, therefore, as stated more fully *supra*, the Court concludes that a reasonable jury could find that Coldwater Creek's "[h]olding a job open for [plaintiff]" beyond the three-month period of her FMLA leave—even if only for two additional days—following her numerous phone calls with Ms. Polan, "is in itself a form of reasonable accommodation and may be all that is required . . . ." Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 263 (2000) (emphasis added); see also Cal. Code Regs. tit. 2, § 11068 ) ("When the employee . . . needs time away from the job for treatment and recovery, . . . extending a leave provided by . . . the FMLA . . . may be a reasonable accommodation . . . ."). Stated differently, the Court cannot find that defendant's failure to accommodate plaintiff under these circumstances was, as a matter of law, unreasonable.

Therefore, plaintiff's motion for summary judgment as to her claim for failure to engage in the interactive process is hereby **DENIED**.

C.     **Conclusion**

In accordance with the foregoing, plaintiff's motion for partial summary judgment is denied in its entirety.

IV.     **DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

A.     **Background**

The following facts are undisputed unless otherwise noted:

From approximately March 2009 through February 22, 2012, plaintiff Sheryl Horn was employed as a "sales lead" in the Simi Valley, California store location of clothing retailer Coldwater Creek.  See Plaintiff's Separate Statement ISO P's Opp'n to Def.'s Motion ("PSUF"), at Nos. 31-33.  Plaintiff has suffered from a right foot ailment since before June 2010.  See Defendant's Separate Statement ISO D's Motion ("DSUF"), at No. 1.  However, it is undisputed that Coldwater Creek Store Manager Debra Johnson

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

had no knowledge of plaintiff's foot problem until plaintiff advised in or around November 2011 of her need for foot surgery.  Id.

On November 6, 2011, plaintiff delivered a letter to Ms. Johnson informing her that she had requested FMLA leave for a scheduled surgery on her right foot.  PSUF at No. 100.  Johnson took plaintiff to her back office, sat her down, and asked about how her foot was feeling.  Id. at No. 101.  According to plaintiff, Johnson "said that she thought it was very funny that [plaintiff] hadn't been complaining about [her] foot and the pain in it."  Id.  Plaintiff explained to Johnson that she "didn't think that was appropriate to do at work," and Johnson responded, "Well it's odd [that] you had a foot operated on a year ago, and that they didn't do both of them at the same time."  Id.  Plaintiff explained that she had wanted to have surgery on both feet at the same time, but her doctor informed her that his was not possible.  Id.  Johnson responded, "Well, it's odd that you have such pain in it now."  Id.  Plaintiff then showed Johnson that she wore boots that were a size-and-a-half too large so that she could fit an ice pack underneath her foot to help quell the pain.

Plaintiff avers that Johnson then stated the following:

> Well, you're abandoning all your associates . . . You're going to have surgery after Thanksgiving which takes you out at Christmastime . . . You've let everybody down.  All the associates are going to have to work harder because you're not going to be here and because you have to have this surgery.

Id. at Nos. 102-103.  Plaintiff asserts that Johnson told her approximately six times that she was letting her sales associates down by taking FMLA leave following her surgery.  Id. at No. 104.

According to plaintiff, Johnson also stated the following:

> When you have that surgery, one of the biggest problems you're going to have is you're going to get fat.  Are you afraid you're going to get fat, Sheryl?  Don't you wish you had kept some of those size 10s and size 12s.  Because you know what?

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

> You have that surgery, you'll be right back in and you are going
> to get so fat.

Id. at No. 106.  Johnson, who was aware that plaintiff had previously had an aneurysm, further stated, "Sheryl, you're going to go out on this FMLA and you're going to use up all your FMLA too . . . what are you going to do if that aneurysm ruptures?  What are you going to do . . . [when] you know you've used up all your FMLA[?]"  Id. at No. 107. Plaintiff responded, "I guess I'll bleed to death," and walked out of the office.  Id. at No. 108.

Shortly thereafter, on November 28, 2011, plaintiff had surgery on her right foot and was bedridden for approximately one month due to tenderness and swelling from the surgery.  Id. at Nos. 110-111.  As plaintiff began planning to return to work, she began communicating, in February 2012, with Coldwater Creek Leave Coordinator Grace Polan.  Id. at No. 112.  During their conversations, plaintiff told Ms. Polan that she "was being harassed and retaliated [against] by Ms. Johnson and that she was afraid of retaliation when she returned to work."  Id. at No. 112.  It is undisputed, however, that as Leave Coordinator, Ms. Polan does not handle personnel complaints or employee grievances, and that Coldwater Creek policy required plaintiff to contact her Regional Manager or District Manger to report a personnel problem.  DSUF at Nos. 14-15.

After plaintiff provided Ms. Polan with a doctor's note releasing her to return to work, albeit with restrictions, on March 1, 2012, Ms. Polan told plaintiff, "You can't possibly work with these restrictions.  You can't walk."  PSUF at Nos. 113-114.  Plaintiff responded, "I'm ambulatory.  I can walk.  I'm fine."  Id. at No. 115.  Plaintiff also told Ms. Polan that she could actually return on March 5, 2012, without any restrictions whatsoever.  Id.  However, Polan purportedly responded, "It doesn't matter.  You can't walk. . . . You can't work with these restrictions."  Id. at No. 116.

On February 22, 20 12, Ms. Piazza, the District Manager, called plaintiff and terminated her.  Id. at No. 122.  When plaintiff  asked, "You're terminating me?", Piazza responded, "No, you terminated yourself."  Id. at No. 124.  Plaintiff avers that after she was terminated she was "very depressed and was reeling from the shock of being terminated."  Id. at No. 125.  Plaintiff also "suffered from headaches, had problems sleeping, had panic attacks, and suffered from anxiety due to Defendant's misconduct." Id. at No. 126.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|----------|------------------------|------|----------------|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

Plaintiff also offers the following additional facts regarding events that preceded November 2011, when plaintiff had her foot surgery:

On an unspecified date, Carrie Hodges, a Coldwater Creek sale associate whom plaintiff supervised, filed a complaint against Ms. Johnson for disability discrimination. Id. at Nos. 35-40.  In April 2011, Libby Feyh of Coldwater Creek's Human Resources Department was sent to investigate Carrie Hodges's disability discrimination complaint against Ms. Johnson.  Id. at No. 57.  As part of this investigation, Ms. Feyh interviewed plaintiff, who told Feyh that "there was a morale problem in the store."  Id. at No. 62. After the interview, Coldwater Creek District Manager Kelly Remple called plaintiff and spoke with her.  Id. at No. 67.  Among other things, plaintiff told Ms. Remple, "[W]e have a terrible problems here . . . and moral issues.  This manager [Ms. Johnson] is a problem for us . . . You've got to help us, Kelly . . . This is not the way a Coldwater Creek store is usually run or should be run."  Id. at Nos. 68-70.

Although Ms. Feyh, the interviewer from Human Resources, had assured plaintiff that their conversation would be kept confidential, Ms. Johnson would later tell plaintiff that Feyh told Johnson everything that had been said in the interviews.  Id. at Nos. 73-74. After Johnson revealed this fact to plaintiff, Johnson pointed to a chart on the wall that included various 800 phone numbers to different agencies, and said to plaintiff, "See these numbers?  Sheryl, you can call any of these numbers any time you want and nobody is going to help you."  Id. at No. 75.  Plaintiff avers that her relationship with Johnson took a turn for the worse after this exchange.  Id. at No. 78.  Specifically, plaintiff states that Johnson grabbed her arm, shoulder, and elbow approximately five to ten times, at least two of which "were extremely painful."  Id. at No. 86.  Johnson also informed plaintiff that she was "starting a paper trail" on her.  Id. at No.  88.  Over time, Johnson also gave plaintiff several written warnings "in retaliation for complaining to Feyh about Ms. Johnson and for requesting FMLA leave."  Id. at No. 90.  On three separate occasions, Ms. Johnson also purportedly told plaintiff, "I'm going to have your ass."  Id. at Nos.  96-97.

## B.    Discussion

Through the instant motion, defendant moves for summary judgment as to plaintiff's second claim (harassment based upon disability), sixth claim (retaliation), tenth

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

claim (intentional infliction of emotional distress), and eleventh claim (negligent hiring, retention, supervision, and training).  For reasons articulated in the discussion that follows, the Court denies defendant's motion in its entirety.

**1.    Plaintiff's Claim for Harassment based upon Disability, pursuant to Cal. Gov. Code § 12940, <u>et seq.</u>**

Plaintiff's second claim is asserted under FEHA and alleges that she suffered harassment on the basis of her disability.  Complaint ¶ 45.  According to the operative complaint, plaintiff's disability arose from her November 2011 foot surgery.  <u>See</u> <u>id.</u> ¶ 7 ("Plaintiff was required to undergo surgery to remove a bunion on her foot and reconstruct part of her foot.  Due to this condition that required surgical intervention, plaintiff was a disabled person as that term is defined by law.").

"Whereas the federal anti-discrimination statutes treat harassment as a form of discrimination, under FEHA, harassment and discrimination fall under separate statutory prohibitions.[2]  <u>Lawler v. Montblanc N. Am., LLC</u>, No. 10-CV-1131, 2011 WL 1466129, at *9 (N.D. Cal. Apr. 15, 2011) (Koh, J.) (citing Cal. Gov. Code §§ 12940(a), (j)(1)), <u>aff'd</u>, 704 F.3d 1235 (9th Cir. 2013).  To establish a claim for harassment under FEHA, a plaintiff must demonstrate that: "(1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment."  <u>Lawler v. Montblanc N. Am., LLC</u>, 704 F.3d 1235, 1244 (9th Cir. 2013) (citing <u>Aguilar v. Avis Rent A Car Sys., Inc.</u>, 21 Cal.4th 121, 130 (1999)).

In the instant case, it is undisputed that Coldwater Creek Store Manager Debra Johnson had no knowledge of plaintiff's foot problem—which forms the basis of her disability and "protected group" status—until plaintiff advised Johnson of her need for foot surgery in November 2011.  <u>See</u> DSUF at Nos. 1-2; PSUF at Nos. 1-2.  Thus, unlike

---

[2]  As stated *supra*, defendant does not move for summary judgment as to plaintiff's discrimination claim.  The Court notes that "[u]nlike discrimination claims, harassment 'consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management.' "  <u>Lawler</u>, 704 F.3d at 1244 (quoting <u>Reno v. Baird</u>, 18 Cal. 4th 640, 647 (1998)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'**

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

some of plaintiff's other claims, including her retaliation claim and her IIED claim, plaintiff's harassment claim is arguably not based upon conduct that preceded November 2011, such as Johnson's repeated grabbing of plaintiff's arm or her alleged retaliation against plaintiff for comments that she made to the Human Relations Department.[3]

Rather, the conduct that gives rise to plaintiff's harassment on the basis of disability claim is essentially limited to two incidents: (1) plaintiff's conversation with Ms. Johnson on November 6, 2011 on the eve of her FMLA leave, and (2) plaintiff's phone conversations with Ms. Polan and Ms. Piazza around the time of her scheduled return-to-work date. As to the first of these incidents, it is undisputed that during their November 6, 2011 conversation, Johnson (1) expressed skepticism about plaintiff's foot problem (Johnson thought "it was very funny" that plaintiff hadn't been complaining about her foot); (2) said roughly six times that plaintiff was "letting her associates down" by taking FMLA leave; (3) stated that plaintiff would "get fat" because of the surgery; and (4) stated that plaintiff was "going to use up" all of her available FMLA leave as a result of the surgery. Defendant asserts that Johnson's conduct on this date "do[es] not rise to the level of severe or pervasive conduct as a matter of law." D's Motion at 5. Specifically, defendant avers that plaintiff "described what amounts to a single, isolated incident in the one month of November 2011 when she gave her 30 days' notice of needing surgery," and that Johnson's "minor statements within the span of 30 days fall well short of satisfying the high 'severe' or 'pervasive' standard." Id. at 6.

"With respect to the pervasiveness of harassment, courts have held an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." Lyle v. Warner Bros. Television Prods., 38 Cal. 4th 264, 283 (2006); Aguilar, 21 Cal.4th at 130 (same). "That is, when the harassing conduct is not severe in the extreme, more than a few isolated incidents must have occurred to prove a claim based on working conditions." Lyle, 38 Cal. 4th at 284. " '[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' " are not sufficient

---

[3] Regarding the two occasions on which Johnson's grabbing of plaintiff's was actually "painful," plaintiff stated in her deposition that the first painful grab occurred "early on" in her working with Ms. Johnson in November 2010, Horn Deposition at 50:2-7, and the second grab occurred around August or September 2011, id. at 51:14-19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

to establish a harassment claim.  Mokler v. Cty. of Orange, 157 Cal. App. 4th 121, 142
(2007) (quoting Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 872 (9th Cir. 2001));
cf. McGinest v. GTE Service Corp., 360 F.3d 1103, 1113 (9th Cir.2004) ("Simply
causing an employee offense based on an isolated comment is not sufficient to create
actionable harassment . . .").  In order "[t]o be actionable, . . . a workplace must be
*permeated* with discriminatory intimidation, ridicule and insult."  Hope v. California
Youth Authority, 134 Cal. App. 4th 577, 589-90 (2005) (emphasis added).

   With respect to the harassing conduct itself, the conduct must be "both objectively
and subjectively offensive, one that a reasonable person would find hostile or abusive,
and one that the victim did in fact perceive to be so."  Erdmann v. Tranquility Inc., 155 F.
Supp. 2d 1152, 1159 (N.D. Cal. 2001) (quoting Faragher v. City of Boca Raton, 524 U.S.
775, 786 (1998)).  In Lawler v. Montblanc, for example, the Ninth Circuit held that "a
single incidence of the 'gruff,' 'abrupt,' and 'intimidating' behavior [that plaintiff]
described [in that action] is not sufficiently severe to constitute a hostile working
environment."  Lawler, 704 F.3d at 1245 (relying upon the California Supreme Court's
decisions in Lyle and Aguilar in affirming summary judgment in favor of defendant-
employer on plaintiff's section 12940(j) FEHA harassment claim).

   Here, however, where the severity of the alleged abuse "is questionable, it is more
appropriate to leave the assessment to the fact-finder than for the court to decide the case
on summary judgment."  Davis v. Team Elec. Co., 520 F.3d 1080, 1096 (9th Cir. 2008)
(reversing award of summary judgment in favor of defendant-employer when plaintiff
had raised genuine issues of material fact on her disparate treatment, retaliation, and
hostile work environment claims).  Although it is unclear whether plaintiff's claim "will
ultimately persuade the trier of fact," she has "alleged sufficient facts to state a prima
facie case" when "viewing the facts in the record in the light most favorable to the
non-moving party."  Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1055 (9th Cir.
2007).  Indeed, the Ninth Circuit has repeatedly cautioned that "it should not take much
for [a] plaintiff in a discrimination case to overcome a summary judgment motion."
Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 499 (9th Cir. 2015) (collecting cases); see
also Wright v. United Parcel Serv., Inc., 609 Fed. App'x 918, 922 (9th Cir. 2015)
(reversing district court's grant of summary judgment on plaintiff's claims for disability
discrimination, failure to accommodate, and failure to engage in the interactive process in
good faith).  " 'This is because the ultimate question is one that can only be resolved
through a searching inquiry—one that is most appropriately conducted by a factfinder,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

upon a full record.' " Nigro, 784 F.3d at 499 (quoting Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1124 (9th Cir. 2000)).

Accordingly, defendant's motion for summary judgment as to plaintiff's FEHA claim for harassment on the basis of disability is hereby **DENIED**.

## 2.    Plaintiff's Claim for Retaliation, Pursuant to Cal. Gov. Code § 12940, et seq.

FEHA makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  Cal. Gov. Code § 12940(h).  California courts employ the McDonnell Douglas burden-shifting framework in analyzing retaliation claims. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973)).  Thus, a plaintiff claiming retaliation under FEHA must first establish a prima facie case by showing that "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  Yanowitz, 36 Cal. 4th at 1042.  Once the prima facie case is established, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the adverse action.  Scotch, 173 Cal. App. 4th at 1020.  Upon making such a showing, the burden shifts back to the plaintiff to establish intentional retaliation.  Id. at 1021.

Here, defendant asserts that plaintiff is advancing her retaliation claim on two separate theories: (1) "plaintiff's central argument is that she was terminated because of her disability," but plaintiff also argues that she "was terminated out of retaliation for criticizing Ms. Johnson in the April 2011 interview with HR investigator Libby Feyh." D's Motion at 9.  In its motion, defendant appears not to challenge plaintiff's prima facie case to the extent it is premised upon the first theory regarding her disability; rather, defendant argues that plaintiff's second theory fails as a matter of law because plaintiff has failed to establish a prima facie case that a causal link existed between the protected activity (plaintiff's testimony to Human Relations) and the employer's adverse action (termination of plaintiff's employment).  In particular, defendant argues that "there is not a shred of evidence that plaintiff's April 2011 interview was 'on the minds' of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

management when she was terminated," and further, "the substantial passage of time [between April 2011 and plaintiff's termination in February 2012] precludes any inference of causation."  D's Motion at 9-10.

In her opposition, plaintiff argues, however, that defendant's view of what constitutes an "adverse employment action" is overly narrow, as it focused only on defendant's decision to terminate plaintiff's employment.  As plaintiff rightly argues, the California Supreme Court has made clear that in addition to termination, any "adverse treatment that is *reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion* falls within the reach of the antidiscrimination provisions of section[] . . . 12940(h)."  Yanowitz, 36 Cal. 4th 1028, 1054-55 (2005).  More specifically, this section

> protects an employee against unlawful discrimination with respect not only to so-called "ultimate employment actions" such as termination or demotion, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career.  Although a mere offensive utterance or even a pattern of social slights by either the employer or co-employees cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment for purposes of section 12940(a) (or give rise to a claim under section 12940(h)), the phrase "terms, conditions, or privileges" of employment must be interpreted liberally and with a reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment discrimination  that the FEHA was intended to provide.

Id. at 1053-54.

In the instant case, plaintiff avers that she "was written up and given several written reprimands after her interview with Ms. Feyh, where[in] [plaintiff] informed her that there was low morale at the store and it was caused by Debra Johnson."  P's Opp'n at 19-20.  Specifically, plaintiff asserts that "there's no question" that Johnson "made things

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

a lot harder for [her] after the Libby Feyh interviews." Id. at 7. After Johnson learned of what plaintiff had shared with Human Relations, Johnson told her that she was "starting a paper trail on [her]." Id. Plaintiff avers that Johnson gave her several written warnings between October and November 2011 "in retaliation for complaining to Libby Feyh about Johnson and for requesting FMLA leave." Id. at 20 (citing Horn Deposition at 119:18-120:2) ("[Johnson] wrote me up. She called me in and the daily reprimands in the office got to be a joke in the store. [Johnson] would call me in constantly, yelling at me, telling me I hadn't done something right. Constantly.").

In its reply, defendant contends that, as a matter of law, Johnson's write-ups and reprimands were not "adverse employment actions." Ultimately, however, the Court cannot make any such conclusion as a matter of law. "[N]umerous cases recognize that adverse employment action includes treatment similar to that here at issue." Yanowitz, 36 Cal. 4th at 1060 (citing Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998) (finding that written reprimands, an employer's solicitation of negative comments by coworkers, and a one-day suspension constituted adverse employment actions); Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir.1998) (holding that coworker hostility or retaliatory harassment, if sufficiently severe, can constitute adverse employment action for purposes of a title VII retaliation claim)).

Thus, for the limited purpose of establishing a prima facie case of retaliation, the Court finds that Johnson's four written reprimands of plaintiff constitute "adverse treatment that [was] reasonably likely to impair [plaintiff's] job performance or prospects for advancement or promotion" and therefore "falls within the reach" of section 12940(h).[4] Yanowitz, 36 Cal. 4th 1028, 1054-55, 1060 ("Actions that threaten to derail

---

[4] In its reply, defendant cites to the following portion of plaintiff's deposition testimony that arguably undermines her claim regarding Johnson's purportedly retaliatory reprimands: "While there were issues on there, on the write-ups, they were – some of them, certainly they had a basis, there's no question about that. But there's one of the warnings or write-ups that Deb [Johnson] gave that I took exception to." Horn Deposition at 120:3-10. Defendant avers that in making this statement, "[p]laintiff admitted . . . that all of her written reprimands (including 'Notes of Conversation') were warranted and fair, except for one." Reply at 10. The Court rejects this argument, as (1) even a single, purportedly retaliatory reprimand may be sufficient to establish plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

an employee's career are objectively adverse, and the evidence presented here creates a factual dispute that cannot be resolved at the summary judgment stage."). Because plaintiff has established a prima facie case of retaliation based upon Johnson's purported reprimands, and defendant has not attempted to show a legitimate, nondiscriminatory reason for such potentially adverse actions, defendant's motion for summary judgment as to this claim must be **DENIED**. See Scotch, 173 Cal. App. 4th at 1020.

### 3.    Plaintiff's Claim for Intentional Infliction of Emotional Distress

A cause of action for intentional infliction of emotional distress (IIED) exists when there is: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009) (internal quotations and citation omitted).

"While the outrageousness of a defendant's conduct normally presents an issue of fact to be determined by the trier of fact, the court may determine in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Trerice v. Blue Cross of California, 209 Cal. App. 3d 878, 883 (1989) (internal citation omitted). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." Hughes, 46 Cal. 4th at 1051. The defendant conduct must also be "intended to inflict injury or engaged in with the realization that injury will result." Id.

In defendant's view, although plaintiff here "generally avers that Johnson was extremely mean to her and cursed at her," such conduct "is obviously legally insufficient," as a matter of law, to constitute an IIED claim. D's Motion at 7. It is true, of course, that "[l]iability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Hughes, 46 Cal. 4th at 1051 (internal quotation omitted). Here, however, among the

---

prima facie case here, and (2) it does not necessarily follow that because plaintiff only "took exception" with one of the reprimands, she therefore believed that "all of her [other] written reprimands were warranted and fair," as defendant asserts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

allegedly "outrageous conduct" upon which plaintiff's claim is premised is Johnson's purportedly painful grabbing of plaintiff's arm, which had undergone surgery in the past. Specifically, plaintiff testified as follows during her deposition:

> [Johnson] had a continual pattern of grabbing me.  The grabbing was really difficult.  I've had to ulnar nerve surgeries on this arm.  [Johnson] would come and grab me, and I told her — it's nerve surgery, so it's very painful — I said, "Please do not grab my arm.  Please do not grab my arm."  And she would still do it.  My shoulder, my arm, my wrist.

Horn Deposition at 135:8-15.  In a declaration submitted in opposition to the instant motion, plaintiff further testifies as follows:

> When I told Ms. Johnson that it was painful when she grabbed her on the arm due to nerve surgery and to please not grab my arm, Ms. Johnson disregarded me and continued to do it anyway.  Ms. Johnson grabbed my arm, shoulder, and elbow approximately 5-10 times, of which two were extremely painful.

Horn Declaration ISO Opp'n, at ¶ 12.

Defendant acknowledges that "physical violence can sometimes be sufficient to create an IIED claim," but nonetheless contends that the conduct at issue here is insufficient as a matter of law.  Motion at 8.  Citing to two district court decisions of the Southern District of New York and one decision of the Appellate Division of the New York State Supreme Court, defendant avers that "[c]ourts have repeatedly granted summary judgment on IIED claims under circumstances of much more aggravated battery than the circumstances in this case."  Id. at 9 (citations omitted).  Defendant acknowledges, however, that "[t]there does not appear to be any published California case law on this issue."  Id. at 9 n.2.

Ultimately, the Court cannot conclude that no reasonable juror could find Johnson's repeated grabbing sufficient to constitute "extreme or outrageous" conduct.  To the extent defendant disputes the veracity of plaintiff's assertion that Johnson grabbed her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

as many as ten times, any such dispute simply confirms the existence of a triable issue of fact to be resolved at trial, and further underscores the appropriateness of denying summary judgment.[5]

---

[5] Defendant argues in its reply that plaintiff "exaggerates the number of times Ms. Johnson grabbed her arm," and "previously testified that Ms. Johnson grabbed her arm twice." Reply at 6. Specifically, defendant avers that "[i]n [plaintiff's] present self-serving declaration," plaintiff "states [that] Ms. Johnson grabbed her arm '5-10 times.' " Id. (citing Horn Decl. at ¶12). Accordingly, defendant objects to plaintiff's additional testimony regarding the number of times that Johnson purportedly grabbed her arm, arguing that plaintiff "cannot avoid summary judgment by manufacturing post hoc facts in a declaration that contradicts prior deposition testimony that she has since verified." Id.

The Court finds, however, that the statements in plaintiff's recent declaration are more appropriately characterized as supplementary to her deposition testimony, wherein plaintiff testified regarding two particular occasions (and not necessarily the *only* two occasions) on which Ms. Johnson purportedly grabbed her arm. In the Ninth Circuit, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition; minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." Messick v. Horizon Indus., Inc., 62 F.3d 1227, 1231 (9th Cir. 1995). To the extent that there exists any disparity between plaintiff's prior testimony and her recent declaration, such disparity is not "so extreme that the court must regard the differences between the two as contradiction." Yeager v. Bowlin, 693 F.3d 1076, 1080-81 (9th Cir. 2012) (affirming lower court's decision to strike plaintiff's declaration because plaintiff "remember[ed] almost nothing about the events central to the case during his deposition, but suddenly recall[ed] those same events with perfect clarity in his declaration in opposition to summary judgment without any credible explanation as to how his recollection was refreshed"). With respect to the instant motion, "the sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." Id. at 1080. Accordingly, the court declines to exclude these portions of plaintiff's declaration under the "sham affidavit" rule or on the related ground that the declaration contradicts prior testimony. See Fed. R. Evid. 608.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

Accordingly, defendant's motion for summary judgment as to plaintiff's IIED claim is hereby **DENIED**.

### 4.    Plaintiff's Claim for Negligent Hiring, Retention, Supervision, and Training

In her complaint, plaintiff alleges in generalized terms that Coldwater Creek was negligent in its hiring, training, supervising, and retaining of employees Johnson, Piazza, and Polan. See Complaint at ¶¶ 159-167. Under California law, "[a]n employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit." Roman Catholic Bishop v. Superior Court, 42 Cal. App. 4th 1556, 1564 (1996). "Liability for negligent hiring . . . is based upon the reasoning that if an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees." Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339 (1998). "Negligence liability will be imposed on an employer if it 'knew or should have known that hiring [or retaining] the employee created a particular risk or hazard and that particular harm materializes.' " Phillips v. TLC Plumbing, Inc., 172 Cal. App. 4th 1133, 1139-40 (2009) (citation omitted).

Plaintiff argues in opposition to the instant motion that summary judgment as to her negligent retention claim must be denied because: (1) the deposition testimony of a third party witness, Carrie Hodges, "clearly shows that Ms. Johnson discriminated against employees with disabilities, such as plaintiff, and was therefore "unfit to be general manager of the Simi Valley Coldwater Creek  store"; (2) Coldwater Creek "obviously" knew that Ms. Johnson "was unfit or incompetent because not only Ms. Hodges filed a complaint about her but others, including [plaintiff,] attributed the low morale in the store to Ms. Johnson"; (3) Ms. Johnson's unfitness "harmed [plaintiff] because Ms. Johnson harassed and retaliated against [plaintiff] for telling the truth to [the Human Relations Department]"; and (4) plaintiff's "emotional distress was substantially caused by Ms. Johnson's  harassment and discrimination."  Opp'n at 21-22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:13-cv-00413-CAS(Ex) | Date | July 18, 2016 |
|---|---|---|---|
| Title | SHERYL HORN v. COLDWATER CREEK US INC, ET AL | | |

Defendant argues, among other things, that plaintiff does not dispute that after defendant investigated Ms. Hodges' complaint against Ms. Johnson, defendant's investigator, Libby Feyh, concluded that Ms. Hodges' complaint against Ms. Johnson was "unsubstantiated."  See D's Motion at 12; see also Supp. Lee Decl., at ¶¶ 21, 24, Exs. Q, T (Piazza Deposition at 68:22-69:6).  In defendant's view, Feyh's conclusion defeats plaintiff's assertion that "Coldwater knew or should have known Ms. Johnson was incompetent or unfit."  Reply at 3.

The Court disagrees and instead finds that the decision regarding the propriety and reasonableness of defendant's conclusion regarding Ms. Johnson's continued employment, following the completion of Ms. Feyh's investigation into the April 2011 discrimination complaint, is an issue better determined by a jury, not the Court.  It is possible, for example, that a reasonable jury could conclude that in spite of Ms. Feyh's findings, defendant nonetheless "should have known that [retaining Johnson] created a particular risk or hazard and that [the] particular harm materialize[d]" the following year, with respect to Ms. Johnson's treatment of plaintiff.  Phillips, 172 Cal. App. 4th at 1139-40.

Accordingly, defendant's motion for summary judgment as to plaintiff's negligent retention claim is hereby **DENIED**.

### C.    Conclusion

In accordance with the foregoing, defendant's motion for summary judgment is denied in its entirety.

## V.    CONCLUSION

In accordance with the foregoing, plaintiff's motion for partial summary judgment, dkt. 31, is hereby **DENIED**, and defendant's motion for partial summary judgment, dkt. 34, is similarly **DENIED.**

IT IS SO ORDERED.

| | 00 | : | 25 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |